Thank you, Your Honors. My name is Bill Peterson. I'm from the Reno, Nevada office of Snell & Wilmer appearing on behalf of the appellant, in this case, Minden Air. The issues in this case, Your Honor, I'm sure as you've read the briefs, are relatively simple as things go, as is the standard of review for the court, which is of course a de novo. It's a de novo review. The burden on the appellant in this case is also, in my view, somewhat de minimis in that all that the appellant needs demonstrate on this de novo review is whether or not there's a material issue of fact upon which a reasonable jury could find in favor of the appellant, in this case, below.  The first thing we say on appeal is that the trial... Just a sec. Could we start the clock? Okay. I should have asked, Your Honor, I'm a little, I was reading, a little confused. I have 10 minutes. Is there, and how much is that? You have 10 minutes total. If you'd like to reserve time for rebuttal, then you need to watch the clock and reserve your time. We just gave you an extra 30 seconds. You can consider that a gift from the court this morning. Okay, thank you. I appreciate that. So I'd like to reserve about three minutes if I'm keeping an eye on the clock here, which might be difficult. For me, the, the trial court, as you know, in this case, a very able judge, I've known him all of his life. He's a terrific judge. In my view, committed error. He basically concluded after reversing himself, really twice, twice before and other related motion, motions, including this one, which was granted on a motion for reconsideration, concluded basically that the appraisal disposed of the entire case. This was there, and we say three things. One is that the appraisal clause, which is very rudimentary, it's only three sentences in the brief, does not in any way delegate or relegate to the appraisers the determination of the cost of repair of the, of the physical damage. Well, that's your position or the court, the court, the judge McKibbin's position. It wasn't doesn't delegate. It was, it was judge McKibbin's opinion originally, originally. And then he, he, he didn't explain why he changed his mind, but he did. He basically concluded at the end that all things are, all things are resolved by that appraisal. But if you just read the appraisal clause itself, which I'm sure you're aware of the laws, probably better than me, is that these appraisal clauses, just like arbitration clauses, are construed very narrowly, and nothing is to be delegated or relegated to appraisal as an arbitration that is not expressly and specifically. So what was the purpose of going, of, of having, of going through the, the act of each of you designating an appraiser, and then choosing a neutral appraiser to, to resolve the conflict? It is, Your Honor. I know it's not, I know it's not intuitive when I say to you that the purpose of the appraiser, appraisal, is exactly what it say, exactly what it states. And there's no dispute about what it states. And that is, it is, it is to, it is to determine a loss. Okay. And the loss would be expressed in what? The loss is, the loss is, the loss is expressed in terms of what, what items, what is physically damaged in the appraiser, in, in, in the incident itself. So you're, it's to be expressed only in terms of parts? Yes. But the clause itself says that the appraiser is to determine the amount of the loss. Yes, the amount of the damage. Tell us what this report would look like if the appraiser followed your view and was determining the amount of the loss. Yes. How do you determine the amount of a crack to the fuselage or something like that? Yes. If you would bear with me, this was coming later in my, in my argument. But the case went quite a long way in pretrial, and so there were expert reports submitted by both sides. Under, under Rule 2026, they submitted an expert report. That expert report is set forth in the record. If you take a look on pages 624, and then it goes on for a number of pages. But if you look at page 624, starting on page 624 and go for a number of pages through there, you will see that their expert, Mr. Bird, did exactly what the appraiser was supposed to do. This expert report identified in seriatim fashion, on a list, exactly all of the pieces and parts that were damaged. You know, for example, I'm just going to read, part of it was reproduced in my brief, but most of it was not. But your, but your expert didn't. Your expert, your expert came up with numbers. Well. Why did your expert come up with numbers if that's not what he was supposed to do? Well, I'll tell you why, Your Honor. It's a, it was a dilemma, really, on our part, why we came up with numbers. We did not believe that, but we also did not want to, not want to foreclose any options or opportunities. We made very clear, as I pointed out in my brief, that we have, we did not think that this was part of the appraisal process at all. But nonetheless, out of precaution, in order not, not, not to be defaulted out for failing to have done so, we did put, we did put numbers in there. And by the way, the numbers we put in there far exceeded the 3.4 million because our appraiser was the only one who completed the, he was the only one really, we had two, two appraisers actually. But ultimately, the appraiser. Say, say it again, Your Honor. But ultimately, the appraiser used numbers. Ultimately, the appraiser used, he did. He, he picked, he picked numbers from both sides. Well, you still haven't told me why that was error. Because, because the numbers, because the appraisal process itself, which is defined in the policy, does not delegate to the appraisal. That's a question, but as Judge Lightman says, the appraisal provision says the appraiser shall determine the amount of the loss. The amount connotes, you know, coming up with a number, doesn't it? How else do you state an amount? Well, I think what you're, what you're doing, Your Honor, is, is avoiding the actual definition set forth in the policy. No, because, because, for instance, the policy defines physical loss as meaning what? The cost of repair. Cost. No, that's incorrect, Your Honor. Well, that's what it says. Total loss means any physical damage loss for which the cost of repair. I see, yeah. So you've got to determine the cost of repair when added to the salvage value, so forth, right? But what I'm saying. So, so the, the, the definition of loss as well as the phraseology in their, in their appraisal provision seems to point toward, you know, coming up with a number. I agree. Well, I don't agree. What I'm saying is, in my view, I would read that differently. In other words, there's. Well, how would you read it? Loss equals physical damage, which is also a defined term. They say physical damage equals physical loss. The emphasis in both of those cases and throughout the, throughout this term in the policy is the physical, the physicality of the, of the, of the concept. It's the physical loss. It's a physical damage. Under your view, the neutral appraiser would get designated. The, he would then resolve the conflict between the two appraisers chosen by the parties, and they were to come up with just a list of parts that needed to be repaired. Which he did, by the way. And then, and then how do we determine, how do we determine whether, whether it's a total loss or whether, I mean, whether it's repairable or not? Well. Under the policy. Who, who, who then, who then has to value the parts and the labor? Same as you go to a repair shop and get your car done. You wouldn't go to an engineer. You go to the, you go to the repair shop and they give you the actual cost associated with that. But is there a, is there procedure under the policy for determining whether you're going to use Star's repair shop or whether you're going to use Minden's repair shop? It just, it just seems, it just seems like a, a, an enormously wasted step. I, I, I, I'll grant you that you've gotten partway there by at least determining which parts need to be repaired. But then you're going to have this whole secondary battle over whose repair shop are you going to go. I mean, this is one thing we take it to, we take, we get cars and we get two different estimates on cars. And all the labor. And all the, yeah, at, at that point you, there's no mechanism for resolving that and almost inevitably with a, you know, $3.5 million airplane, you're going to end up in, you're going to end up in litigation. And that seems to just make the appraisal just really a very superficial step. It just seems to make it really sort of not. That is the way it was written, though, Your Honor. We did not write it. They, they, they wrote it. And I also pointed out to you in my brief that there's, there's a. I think what we're suggesting is, is that as the district court thought that the appraisal might have, might have more teeth and would, and is a little more common sense approach to the whole thing. I, and he is a very common sensical judge. But I do, but I do, I've also, I wanted to get to, and I only have a few minutes left and I do want to reserve something. The other critical issue in this case, which is not that one, but it's also the constructive total loss. And that is, regardless of whether or not. It's not a defined term, right? It is not a, that, that in itself is not a defined term in the policy. Why should we even bother with a term that the parties want to argue about that isn't even in the policy? Well, because the appellants, because the respondents in this case have, have admitted, and it's also part of the common law, and it's also common sensical. When the judge fixed on this as well, a common sensical judge, is that, well, what's the point of doing a bunch of repairs if after you get them, if after you get a repair on the 60 year old aircraft, the FAA says it cannot be recertified. Right, but that was part of the, that was part of the argument over, over the nature of the appraisal, whether it could, whether it could be certified or not. And there were other questions, that is, what, what kind of deterioration had the plane suffered before it had the accident? What had you done since then? Had it been, was it in a hanger? Was it not in a hanger? You know, is it, are the tires deteriorating for? All of that was excluded from the appraisal too, but those are legitimate costs. You know, the, the trial judge originally admitted that he didn't think the appraisal was worth doing at first, until you reach the other question first, is what's the point of spending all the money on these repairs? On this 60 year old aircraft, sustaining this kind of damage, if in point of fact, you cannot get, this airplane is never going to fly again, because it cannot be recertified. That, that was the essential question. And then, they have admitted, regardless of whether it's in the policy or not, it's also part of the common law. It's also commonsensical. If, as a result of the, of the occurrence, the, the stresses and damage to the aircraft are such that it would not be recertified by the FAA, then it's a total loss. So, they have admitted that. Roberts. Right, but the total loss may not be attributable to the accident. It may or may not be, but that's not for the appraiser to decide. That's my point. That, the appraiser doesn't get to decide that, because that's not in the appraisal clause. You just pointed out yourself, it's nowhere in the policy. If it's not in the policy, it's not in the appraisal clause itself. If it's not in the appraisal clause, they don't get to decide it, because they only get to decide what is expressly given to them. They weren't given that issue, total loss, and the judge agreed with me, right up front. He agreed with me a second time when he denied their motion for summary judgment. Then, for whatever reason, and frankly, I think he just got tired of the case, he said, I think the appraisal is enough. He didn't ever, he, he was on my side on that particular issue. Unfortunately, when we disagreed with you for the last time, that's when you said it. Yes, that is unfortunate. Thank you, Your Honor. I only have to. I'm going to, I'm, you're, you're actually over your time. I'm going to give you a couple of minutes for rebuttal. Okay, thank you very much, Your Honor. You're out of your time. Good morning, Your Honor. May it please the court. My name is Keith Yamaguchi. On behalf of Apelli Star Indemnity and Liability Company, I will be addressing those issues on appeal in support of the district court summary judgment. Dismissal of Mendenare's breach of contract claim for relief. Do you have an arrangement with Mr. Kaplan on dividing your time? I do, and I'll be very mindful of that. Mr. Kaplan will be. You are responsible for managing that time. Understood, understood. In response to counsel's argument, I would just like to make a couple brief points. The first is that the district court did not err in finding that the parties are bound by the neutral umpire's determination of the amount of loss. The appraisal provision in the policy can be invoked, as it was in this case, when there is a dispute as to the amount of loss. The dispute regarding the amount of loss in this case, from the beginning, has always been about the two components needed to resolve a covered property damage claim. Number one, the assessment of the physical damage, which in this case was to an aircraft as a result of a wheel up landing. And number two, the cost to repair that damage. From the beginning, Mendenare and Starr exchanged information about physical damage and cost to repair. They could not agree as to the amount of loss. The appraisal conducted in this case did exactly what it was supposed to do. It resolved the disagreement on the amount of loss using a process bargained for and agreed to by the parties in which independent aircraft appraisers for both Menden and Starr provided information regarding the damage to the aircraft and the cost to repair that damage to a neutral umpire selected and agreed upon by the two independent aircraft appraisers. Using this information, the neutral umpire determined the amount of loss to be 1.8 million. This determination- And that's the whole question, isn't it, according to Mr. Peterson, whether or not that was the appraiser's function to determine the amount of loss. That's correct. You heard his argument. I'm sure you're familiar with it. He says no, and tell me why he's wrong. Okay, because if you look at the plain language of the policy, as well as just from a practical sense on what an insurance policy is, what type of contract, what is it supposed to do, providing coverage and indemnity. The only interpretation of the amount of loss is for, as it's used in the appraisal provision, is for that to include a cost repair, some type of a value figure, so we can bring a resolution to the dispute. And in the context of an insurance policy appraisal provision, interpreting an amount of loss to be limited to solely a determination of the physical damage incurred, as Mindenair argues, makes no practical sense. It's unsupported by the case law that we've cited in our brief. And it defeats the fundamental purpose of the appraisal provision to resolve the dispute about the amount of loss, so that the claim can be paid. I'll note that with regard to the policy, Minden argues that physical damage means physical loss. And therefore, loss means physical loss. But that is not what the plain language of the policy states. Under the policy, physical damage is defined, and it means direct and accidental physical loss of or damage to the aircraft, here and after called loss. But does not include loss of use or any residual depreciation or diminution in value after repairs have been made. And I would submit that if physical damage was limited to mean only physical loss, as Mindenair argues, then there would be no need for the policy to specify as it does that the meaning of physical damage specifically excludes loss of use, residual depreciation, and diminution in value, all of which are concepts associated with monetary value and not pure physical damage. And without instructions from the attorneys, the independent aircraft appraisers and the neutral umpire determine the amount of loss in this matter in terms of a monetary value, cost to repair. Because such a determination is the only one that makes any sense. Mindenair is simply unhappy with the determination by the neutral umpire. Because $1.8 million, the amount of loss determination, in Mindenair's view, was less than the insured value of tanker 55. But this is not a basis to disregard the appraisal determination. And with that, I'm going to allow my colleague to address other issues. Thank you, Mr. Yamaguchi. Mr. Kaplan. Thank you. May it please the Court, Mr. Peterson. Your Honors, I'm here to address the bad faith issue in the case. Now, I know Mr. Peterson didn't get a chance to address it during his oral argument. But I think if Your Honors, in reading the brief, you will see that Minden concedes in its brief that if this Court accepts the notion that it was the appraiser's role to determine the amount of loss, the cost to repair, the damage. And if, in fact, we accept that number from the appraiser, then there is no issue of bad faith in the case. They concede that. In their brief, they say, although Minden also appeals from the trial court summary judgment for bad faith claims handling with respect to Minden's claim for total loss and constructive total loss, Minden concedes that this issue turns on the court's resolution of the first two questions. If this court concludes that the appraisal provision in the policy delegated to appraisal the determination of total loss and constructive total loss. And further, that total loss and constructive total loss were, in fact, determined in the appraisal. The district court's decision on bad faith should be affirmed. Well, okay, so what that means is, if you went on the, I'll call it the contract claim, which is the claim involving interpretation of the contract, right? Where Judge McKibben correctly interpreted the provisions that he applied. Correct. If you went on that claim, then it forecloses the bad faith claim. Correct. That's what the parties agreed upon, right? Well, that's what Minden concedes in the brief, and we say we agree. And the reason is that the test for bad faith in Nevada requires not only that the insurer not have a reasonable basis for disputing the claim. So then, what is the rest of your argument? The rest of your argument is, if the court disagrees with Starr's interpretation of the contract, then what should happen to the bad faith claim? Well, then I think you have to look at the process that Starr went through to adjust this claim. Let's assume, hypothetically, the neutral umpire came back and calculated cost to repair above $3.4 million. Then we'd have a situation where the neutral umpire agreed with Minden. That in and of itself wouldn't mean that Starr acted in bad faith. You'd still have to see evidence in the record that Starr knew or was aware that this was a total loss, that the cost to repair this airplane was beyond $3.4 million. And there's, A, there's no evidence in the record to even suggest that Starr ever was aware of that. They couldn't have been because Minden continued to frustrate Starr's effort to get at the bottom line in terms of whether there was structural damage to the wing. Minden continued to promise that it would conduct this internal inspection. It never did. It foreclosed Starr's adjuster from even contacting Minden direct and they had to go through Minden's broker. And Minden's broker even concedes in emails and in his deposition that the ball was in Minden's court. That Minden understood it needed to provide the information to move things forward and it never did. But I guess the overall point is that on two grounds, there is clearly no issue of fact upon which a reasonable jury could find that Starr committed bad faith. One is the fact that the neutral umpire confirmed Starr's position that this wasn't a total loss. So there's no way a jury could say Starr acted in bad faith in resisting the total loss claim. It has been agreed by the neutral umpire that it was not. That the cost to repair was only 1.8 million on an aircraft that had a total insured value of 3.4 million. But secondly, even if the neutral umpire hadn't agreed that this was not a total loss, that wouldn't mean in and of itself that Starr acted in bad faith. There would still need to be evidence in the record that Starr had information to support the notion that this was a cost of repair in excess of 3.4 million dollars. And there's absolutely nothing in the record to suggest that. Starr never was provided with the internal inspection from an engineer that may have supported such a claim. Well, because no one suggested that, it seems to me then, in this case, the issue of bad faith turns upon whether or not Starr's insistence that its interpretation of the contract was correct, whether that was a reasonable position. Is that what it turns on? Well, yes. We certainly agree that if Starr's position on the contract interpretation is correct, that the appraiser had the authority to determine the amount of loss and that meant a dollar number, then there cannot be a bad faith issue because Starr's position throughout was consistent with what the neutral umpire concluded. Could there be a bad faith claim based on not the substantive position that Starr took, but based on an argument that there was delay, that Starr intentionally dragged its feet knowing that Minden was in a financially precarious position? Well, again, we believe based on the record, there is no issue of fact upon which a reasonable jury could make that determination. The Schumacher case, which we cite in our brief, points out that there's really a different standard between bad faith and whether or not an insurer acted negligently during the claims handling process. But we think it's indisputable that at all periods, Minden was the one who had promised to provide the information and didn't provide it, and that when Minden, when it became clear to Starr that Minden wasn't going to provide the information, Starr went through several steps. It contacted the only other vendor that flew this particular type of aircraft and asked them to review the very generalized cost estimate that Minden had provided it. And that entity, Neptune, claimed that this is very excessive. Starr then hired a Jim Everett to review, a structural engineer, to review all of this data. He concluded it was excessive, it wasn't supported. There was a gross number of labor hours that Minden had submitted, over 8,000, which they never broke down, never explained how they came to that number. And Starr, again, reacts to that by having a laser alignment study, which confirmed that there was no structural damage to the wing. So at every step of the way, when Starr was asking for information that Minden had promised to provide, not only did Minden not provide it, but then Starr went the extra step and did everything reasonable to try to get to the answer on its own. And everything it did confirmed to Starr that the submission was excessive and there was no evidence to support that this was a $3.4 million repair job. Thank you. Thank you, Mr. Kaplan. Thank you. A couple of points I would like to make, and thank you for giving me the additional time, Your Honor, is the bad faith claim, bad faith claim, Your Honor, is secondary for this reason. From the very beginning, Minden Air believed, as we've been accused of, that this aircraft was not going to be restored to airworthy status. Looking at this from a common sense point of view, this mom and pop operation has a very old aircraft, 60 years old. It's a refurbished World War II aircraft, modified to fight fires. There's a reason why this is a valued policy and not a repair policy like you might have on your car. This is in the record, it's in my brief. They're told, look, if something happens to your aircraft, this is a really old aircraft, it's not going to fly again, probably not going to fly again. They're in the firefighting business. They need to replace that aircraft. That's one of their only few income-producing products or pieces of equipment. You need to replace this aircraft. It's going to take you $3.4 million to replace this aircraft, to get another aircraft. That's why this is a valued policy. So they buy this policy for $3.4 million, knowing that they're going to have that money available. If something happens to their aircraft, then it can't be recertified. Well, lo and behold, that's exactly what happens. It's a severe impact. 9.5 times G's, 9.5 times the weight of the aircraft. Their DER and another DER comes and tells them this aircraft is never going to fly again, no matter what you do to it. It's not going to be recertified. It's too old. The FAA is going to require every piece disassembled and x-rayed and whatnot. That's why it's 3.4. Let me ask this question now. Assuming the appraiser's determination is correct, that the loss was around $1.8 million, and you're correct that, in effect, the plane was a total loss, the difference could come from factors other than that wheeled-up landing, right? It could, but that also, Your Honor... What's in the record on that, as to the cause? Well, what's in the record? I'll read this to you. This is out of their brief. This is out of their brief now. Minden argues the umpire stated it is beyond the scope of the appraisal to determine the maintenance, inspections, overhauls required to restore the tanker to airworthy status. This is true. That is why the neutral umpire could not and did not opine on whether Tanker 55 could be rendered airworthy. They made no determination. The umpire, in their own admission, made no determination. Their appraisal made no determination as to whether this aircraft is airworthy. We have two expert reports, two experts, said, it doesn't matter. The judge agreed with me in the beginning. Why are we doing this? It doesn't matter. It's not going to be certified as airworthy. That's why they bought this $3.4 million policy. That's what exactly happened to them. Is that part of your argument about constructive loss? It is, Your Honor. That was the second part of the argument. And there's no, and I'm not making this up. This is not something that some lawyer dreamed up. This is part of the law. The common law, it's right in the couch. Common law is constructive loss. The question is, though, whether that common law concept is incorporated into the policy, which has a very specific definition. I don't know if it's incorporated into the policy, Your Honor. It's not in the policy, but it is in the common law. And I once again point out to you, point out to you. No, but what does that mean, if it's in the common law? Regardless of whether the policy provides for it, you're still entitled to the protection of that? Yes. From the insurer? Yeah, because you construe policies to implement the reasonable expectations of an insured. And an insured, are you telling me, are you telling me, are you telling me? Well, that seems like, if that's a reasonable expectation, it's an expectation that you have coverage for something that's not provided for in the policy. No, that's why they bought the valued policy, Your Honor. These insurers, these insurers buy this policy on the basis that if anything serious happens to the aircraft, it needs to be replaced. It's going to take 3.4 million to replace it. That's their reasonable expectation. That's what happened. Then the bad faith comes in because they never gave any credence, never looked at that issue, not even once. It's a total loss. And again, I point out to you, the respondents themselves have admitted that if the aircraft cannot obtain airworthy certification as a result of something happening to this accident, it is a total loss. There's the conditional. Yeah, that's the conditional. Go ahead. If it's a total loss, if it can't be recertified because of something that occurred in the accident, then yes, it is a loss. If it can't be recertified because of something else that is not related to the accident, then that's not the insurer's responsibility. But I bring you back to the beginning, Your Honor, and that is, isn't that a fact question? Isn't that a fact question? If it is a fact question, then they don't get the appraiser doesn't get to decide it. It may well be a fact question, but then this comes back to the original point that you argued, which is, was this to be decided by the appraiser or not? Is that what the contract provided for or was this to be decided by somebody else? Your Honor, there is no possible way to construe this appraisal clause to include a determination of a constructive total loss. It is linguistically, it is intellectually impossible. That's because constructive loss is not a term used in the policy. Well, I agree with that. That's why the appraiser provision doesn't provide for it. Well, the other side has admitted, the common law says, if an insured, is it reasonable for an insurer to say, hey, we bought this policy, by the way, because of this accident, I'm making this assumption, because of this accident, it cannot be recertified as airworthy. It can fly again, we're going to repair it again, but it ain't never going to fly again, so I'm sorry, but you don't get your $3.4 million. Is that a reasonable expectation of the insurer? No, that's why they bought this insured policy for $3.4 million. It's not, there is no definition of, that's why the word constructive is in there, Your Honor, that's why it's constructive. This is, it's pointed out in my brief, couch is, it's the law everywhere. It is commonsensical, because if the airplane is never going to fly again, because of something happened to the accident, which is a fact question, it has to be a total loss, and they have conceded that point. And that is my point, that that, and that is outside the scope of the appraisal, and has to be, and they've admitted that in their brief, too, that it was not determinate. Okay, Mr. Beeson, I think that we understand your position. It takes me well over your time. Thank you very much, Your Honor. Thank you. We thank all counsel for the argument. It was useful. And Minden Air Corporation v. Star Indemnity and Liability Company is submitted. The next case on the calendar is Allen v. Mielis.
judges: Tashima, Bybee, Leitman